UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM GULLEY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | CASE NO. 1:07-cv-788-DFH-TAB |
| ) | |
| ) | |
| ANTHONY MORAVEC, et al., ) | |
| ) | |
| Defendants. ) | |

ENTRY ON DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs William Gulley and others are former employees of a company called Waste Reduction by Waste Reduction, Inc., which is a corporation organized under New York law. Plaintiffs allege that the company failed to pay wages and benefits owed to them. The employer is in bankruptcy, so in this lawsuit the plaintiffs have sued shareholders of the company on five counts related to wages and benefits the company owed plaintiffs. At least some claims of this type against shareholders are authorized by New York Business Corporation Law § 630. Defendants removed the case to federal court and then moved to dismiss plaintiffs' claims. Docket Nos. 27 & 29. Each side in this case seeks to pick and choose the specific features of New York and Indiana law that it prefers. As explained below, neither side's effort is completely persuasive. The court grants defendants' motions with respect to Counts II, III, IV, and V and denies the motions with respect to Count I.

*Standard for Dismissal Under Rule 12(b)(6)*

In evaluating a Rule 12(b)(6) motion to dismiss under the Federal Rules of Civil Procedure, the court must treat all well-pleaded allegations asserted in the complaint as true, construe the allegations liberally, and draw all reasonable inferences in the light most favorable to the plaintiff. See *Brown v. Budz*, 398 F.3d 904, 908-09 (7th Cir. 2005). The factual allegations must raise a right to relief above the speculative level, assuming the allegations are true. See *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Dismissal is warranted if the factual allegations, seen in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief. *Id.* at 1968-69.

*The Case and the Claims*

Waste Reduction by Waste Reduction, Inc. ("Waste Reduction"), a New York corporation, developed processing systems for hazardous and biological waste. Waste Reduction employed the named plaintiffs at its office in Indianapolis, Indiana. In November 2006, Waste Reduction laid off all the plaintiffs, except plaintiff Jeff Whiteley, who had voluntarily resigned from Waste Reduction in October 2006. Plaintiffs allege that Waste Reduction improperly withheld wages and benefits they had already earned, in amounts ranging from several thousand dollars to several hundred thousand dollars for each plaintiff. Plaintiffs also allege that Waste Reduction deducted money from their paychecks for taxes and health insurance but misappropriated these funds.

Plaintiffs sued Waste Reduction itself in an Indiana state court on December 14, 2006, to collect these unpaid wages and benefits. Waste Reduction filed for bankruptcy in the Eastern District of Michigan on April 5, 2007, imposing an automatic stay in plaintiffs' December 2006 suit against Waste Reduction. On May 16, 2007, plaintiffs filed this action against defendants, who plaintiffs believe own shares in Waste Reduction, in the same Indiana state court to collect their unpaid wages and benefits. New York Business Corporation Law § 630 allows employees to pierce the corporate form and to hold a non-public corporation's ten largest shareholders personally liable for unpaid wages and benefits. Plaintiffs alleged in Count I that Waste Reduction's ten largest shareholders are liable for the company's unpaid wages and benefits under New York Business Corporation Law § 630. Plaintiffs allege in Counts II and III that, pursuant to section 630, those shareholders are also liable for liquidated damages under the Indiana Wage Payment and Wage Claims statutes. Plaintiffs allege in Counts IV and V that the defendant shareholders breached a fiduciary duty they owed plaintiffs and committed constructive fraud.

Defendants removed this suit to this court on June 19, 2007, under 28 U.S.C. §§ 1441(b) and (c) because field preemption under the federal Employee Retirement Income Security Act of 1974 ("ERISA") meant that some of plaintiffs' claims necessarily arise under federal law.[1] On July 26, 2007, defendant C&C

---

[1] Defendants' notice of removal also relied upon 28 U.S.C. § 1452(a), which allows for removal of claims related to bankruptcy cases "to the district court for
(continued...)

-3-

Medical Waste Technologies filed a motion to dismiss plaintiffs' non-ERISA claims. On the same day, all other defendants filed a motion to dismiss all of plaintiffs' claims.

*Discussion*

I.   *New York Business Corporation Law § 630*

Unlike Indiana Code § 23-1-26-3, which protects shareholders of Indiana corporations from individual liability for corporate debts, New York Business Corporation Law § 630(a) allows employees to sue a non-public corporation's ten largest shareholders for unpaid wages and benefits, provided that certain conditions are met. Section 630(a) provides:

> The ten largest shareholders, as determined by the fair value of their beneficial interest as of the beginning of the period during which the unpaid services referred to in this section are performed, of every corporation . . ., no shares of which are listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national or an affiliated securities association, shall jointly and severally be personally liable for all debts, wages or salaries due and owing to any of its laborers, servants or employees other than contractors, for services performed by them for such corporation. Before such laborer, servant or employee shall charge such shareholder for such services, he shall give notice in writing to such shareholder that he intends to hold him liable under this section. Such notice shall be given within one hundred and

---

[1](...continued)
the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." The court has not relied here on "related-to" bankruptcy jurisdiction under 28 U.S.C. § 1334(b), for the removal was proper in any event under 28 U.S.C. § 1441 because of ERISA preemption.

-4-

> eighty days after termination of such services, except that if, within such period, the laborer, servant or employee demands an examination of the record of shareholders under paragraph (b) of section 624 . . ., such notice may be given within sixty days after he has been given the opportunity to examine the record of shareholders. An action to enforce such liability shall be commenced within ninety days after the return of an execution unsatisfied against the corporation upon a judgment recovered against it for such services.

Defendants now concede that plaintiffs properly notified them of their intent to sue under section 630. Docket No. 37 at 2.

Defendants have argued that plaintiffs' section 630 claim should be dismissed because plaintiffs had not yet obtained a judgment against Waste Reduction. Defendants other than C&C Medical Waste Technologies also have argued that the court should not apply New York's section 630 because it conflicts with Indiana's policy of protecting shareholders from individual liability.

    A.    *The Condition Precedent*

The first dispute is now easily resolved. On January 25, 2008, plaintiffs obtained a judgment against Waste Reduction from the United States Bankruptcy Court for the Eastern District of Michigan. Docket No. 49, Ex. A. Except for Randall McKee's and Mike Stimak's claims, the bankruptcy court's judgment allowed as secured claims the base amounts that plaintiffs claim Waste Reduction owed them. See Am. Compl. ¶¶ 6-21.[2] McKee claims that Waste Reduction owed

---

[2]The court hereby grants Randall McKee's motion to intervene as a plaintiff, (continued...)

-5-

him $30,461.52 in wages and up to $180,000 in commissions. The bankruptcy order allowed as a secured claim $20,000 for McKee's claim for wages and commissions. Stimak claims that Waste Reduction owed him $308,749.39 in wages and benefits. The bankruptcy order allowed as a secured claim $261,187.10 for Stimak. The bankruptcy order authorized immediate payment for the allowed claims and indicated that Waste Reduction's Board of Directors approved payment of the allowed claims. Defendants' notice informing the court about the bankruptcy order indicated that plaintiffs expected to receive Waste Reduction's payments soon. Docket No. 49 at 2. Until plaintiffs receive their allowed payments, the court will leave the section 630 claim for these payments in place. The unresolved portions of McKee's and Stimak's claims for wages and benefits also remain pending.

The bankruptcy court's order also allowed each plaintiff an additional subordinated claim. The amounts range from $9,677.04 for Tricia Hoppingarner to $522,374 for Mike Stimak. The bankruptcy court order did not indicate whether these subordinated claims were for lost wages and benefits or for some other claim, such as liquidated damages. To the extent that these subordinated claims are for unpaid wages and benefits as defined in New York Business Corporation Law § 630(b), they remain a valid part of plaintiffs' claims under

---

[2](...continued)
see Docket No. 39, and accepts plaintiffs' amended complaint, see Docket No. 41, Ex. A, pursuant to Federal Rules of Civil Procedure 15(a)(2) and 24(b)(1)(B).

section 630.[3]  To the extent that these subordinated claims are for liquidated damages sought under Indiana law, they are dismissed, as discussed below.

Defendants also contend that the court should dismiss this action because plaintiffs filed it too soon, before they obtained a judgment against the employer itself and were unable to satisfy that judgment.  The court is not persuaded that the action should be dismissed on this ground.  Section 630 imposes two time limits.  First, the unpaid employees must give the shareholders written notice of their intent to hold the shareholders personally liable for wages and benefits within 180 days after termination of the employees' services, with an exception not applicable here.  Second, the unpaid employees must commence any lawsuit under section 630 "within ninety days after the return of an execution unsatisfied against the corporation upon a judgment recovered against it for such services." It appears that plaintiffs might have filed this action prematurely, but controlling case law (as opposed to lower court decisions under New York law) is scarce.  Compare *Grossman v. Sendor*, 392 N.Y.S.2d 997 (N.Y. Sup. Ct. 1977) (finding that shareholders of a corporation in bankruptcy were liable under § 630 only after a

---

[3]Section 630(b) provides:

> For the purposes of this section, wages or salaries shall mean all compensation and benefits payable by an employer to or for the account of the employee for personal services rendered by such employee.  These shall specifically include but not be limited to salaries, overtime, vacation, holiday and severance pay; employer contributions to or payments of insurance or welfare benefits; employer contributions to pension or annuity funds; and any other moneys properly due or payable for services rendered by such employee.

bankruptcy court issued an order confirming bankruptcy), with *Sasso v. Millbrook Enterprises, Inc.*, 438 N.Y.S.2d 59 (N.Y. Sup. Ct. 1981) (excusing condition of obtaining unsatisfied judgment against corporation in bankruptcy because automatic stay prevented plaintiffs from proceeding against corporation), abrogated on other grounds by *Stoganovic v. Dinolfo*, 461 N.Y.S.2d 121 (N.Y. App. Div. 1983).

To that end, the court in *In re Nargassans*, 103 B.R. 446 (Bankr. S.D.N.Y. 1989) (denying in part summary judgment motion seeking dismissal of involuntary petition against alleged debtor), has provided a helpful analysis that balances the evident purposes of section 630: protecting employees while also ensuring that major shareholders will be liable only when the corporation is unable to pay its wage debts. In *Nargassans*, petitioners were former employees of a corporation subject to New York Business Corporation Law § 630. After the corporation filed for bankruptcy, the employees filed an involuntary bankruptcy petition against Nargassans, the corporation's only shareholder, for unpaid wage debts. Nargassans argued that the petition against him was premature because the corporation had not yet been deemed bankrupt. After discussing *Grossman* and *Millbrook Enterprises*, the *Nargassans* court predicted that New York's highest court would examine the corporation's ability to pay the employees' claims to determine whether the suit was premature. *Id.* at 453. If the outstanding debt did not meet the allowance for wage and benefit claims under 11 U.S.C. § 507(a) and the company was "insolvent in the balance sheet sense," New York courts

would likely see the automatic stay as satisfying section 630's condition precedent of obtaining an unsatisfied judgment. *Id.* "The strong policy of protecting employees, unequivocally expressed by the New York Court of Appeals in *Sasso v. Vachris* [484 N.E.2d 1359 (N.Y. 1985)], permits no other result." *Id.*

This court does not determine in any definitive way whether these plaintiffs filed too soon. Even if plaintiffs filed too soon, the court sees no convincing reason to dismiss Count I rather than stay the case to await final determination of the plaintiffs' claims in the bankruptcy court. The court is aware that there are some remedial schemes that require dismissal of lawsuits that are filed too early. One example is the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675(a), which provides that an "action shall not be instituted upon a claim against the United States for money damages" unless the claimant has first exhausted administrative remedies. In *McNeil v. United States*, 508 U.S. 106 (1993), the Supreme Court held that a federal court must dismiss a suit under the FTCA if the plaintiff filed before exhausting administrative remedies, even if the deadline for filing a new action had passed in the meantime. The Court relied on the statutory language that an "action shall not be instituted" until the administrative claim has been finally denied. 508 U.S. at 111. The New York law in this case appears to contain no similar prohibition. The court has not identified any controlling or even applicable

case law that would require dismissal of a suit filed prematurely under section 630. A stay should suffice to protect all parties' legitimate interests.[4]

      B.    *The Public Policy Argument*

Some defendants have offered an additional argument to support dismissal of the section 630 claims: that Indiana courts would not apply New York's section 630 because it conflicts with Indiana's policy of protecting shareholders from individual liability. This argument, which C&C Medical Waste Technologies wisely chose not to assert, is unpersuasive to the point of absurdity. The defendants are shareholders in a New York corporation. Their obligations for corporate liabilities are properly regulated by New York law, and they have no legitimate basis for trying to avoid application of New York law. Indiana would have no difficulty applying New York law to the question.[5]

---

[4]Defendants also point out that twenty-two defendants remain in this suit, while section 630(a) authorizes suit against only the ten largest shareholders, measured in terms of the "fair value of their beneficial interest as of the beginning of the period during which the unpaid services referred to in this section are performed." It is clear that many of the defendants are entitled to dismissal, but plaintiffs are entitled to conduct some prompt discovery to identify the proper defendants. To that extent, this case may proceed at this point.

[5]As a general rule, of course, one state is not required to apply another state's law when the foreign law violates an important or fundamental public policy of the forum state. See *Nevada v. Hall*, 440 U.S. 410, 421-22 (1979); *Pink v. A.A.A. Highway Express, Inc.*, 314 U.S. 201, 210 (1941). Indiana has recognized this general rule, though it is applied only rarely. *E.g., Wabash Railroad Co. v. Hassett*, 83 N.E. 705, 709 (Ind. 1908) (recognizing that Indiana would be justified in refusing to apply an Illinois law "prejudicial to the general interests" of Indiana citizens, but finding that no such prejudicial conflict between Indiana and Illinois law existed); *Alli v. Eli Lilly & Co.*, 854 N.E.2d 372, 379-80 (Ind. App. 2006)
(continued...)

The internal affairs doctrine of corporation law and conflicts of law disposes of the defendants' public policy argument. To maintain uniform governance in a free market, the law of the state in which a company incorporates governs its internal affairs. See *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 90 (1987) ("This beneficial free market system depends at its core upon the fact that a corporation – except in the rarest situations – is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation."); *Nagy v. Riblet Products Corp.*, 79 F.3d 572, 576 (7th Cir. 1996) (observing that although Indiana courts have not expressly adopted the "internal affairs doctrine," Indiana "presumptively conforms to the norm in looking to the law of the state of incorporation for internal-affairs issues"). The Indiana legislature has expressly provided that the Indiana business corporation law "does not authorize Indiana to regulate the organization or internal affairs of a foreign

---

⁵(...continued)
(declining to apply rule to conflict in product liability laws and noting that public policy exception to choice-of-law rules is "very narrow" and applies only where law would be "against good morals or natural justice or prejudicial to the general interests of the citizens of this State"); *Schaffert v. Jackson National Life Ins. Co.*, 687 N.E.2d 230, 234 (Ind. App. 1997) (declining to apply rule where issue was whether life insurance policy was payable where insured died before undergoing required physical examination); *Maroon v. State Dep't of Mental Health*, 411 N.E.2d 404, 410-12 (Ind. App. 1980) (declining to apply rule to remedies available for wrongful death, and noting that rule is traditionally limited to cases such as those involving gaming contracts, lotteries, and marriages of close relatives); *Dearborn v. Everett J. Prescott, Inc.*, 486 F. Supp. 2d 802, 812 (S.D. Ind. 2007) (predicting that Indiana would not enforce Maine law allowing court to rewrite and then enforce an unreasonably broad covenant not to compete); see generally Eugene F. Scoles, et al., Conflict of Laws § 3.15 (4th ed. 2004) ("The public policy exception . . . is to be construed narrowly: fundamental policies of the forum must be offended; . . . nor may the denial of access to the local courts discriminate against a foreign cause of action which would be entertained if it had arisen locally.").

corporation authorized to transact business in Indiana." Ind. Code § 23-1-49-5. That is Indiana's public policy, as expressed by the legislature – not to interfere with foreign corporations' internal affairs.

The issue of shareholder liability for debts of the corporation is one of the core topics covered by the internal affairs doctrine. Section 307 of the Restatement (Second) of Conflict of Laws provides: "The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contributions and to its creditors for corporate debts." See also Restatement (Second) of Conflict of Laws ch. 13, introductory note, at 288 ("Probably the most important attribute of a business corporation is limitation of the liability of shareholders for any act or omission of the corporation."). This rule can easily be understood both for practical reasons and as a special application of the general rule that courts enforce choice of law provisions in contracts. The Seventh Circuit explained the practical side in *Nagy*: a "single rule for each corporation's internal affairs reduces uncertainty and the prospect of inconsistent obligations." 79 F.3d at 576. The doctrinal basis is equally clear: "After all, the corporate charter is a species of contract, and selecting a state of incorporation then is no different from putting a choice-of-law clause in a complex commercial contract." *Id.* (concluding that Indiana would probably apply law of state of incorporation to internal affairs issue of whether controlling shareholders have fiduciary duties to minority shareholders who are employees).

The issue here is not whether Indiana law in general would protect shareholders from individual liability for unpaid wages. The issue is whether Indiana courts would prevent New York law from governing the internal affairs of a New York corporation. See generally *CTS Corp.*, 481 U.S. at 93 ("We agree that Indiana has no interest in protecting nonresident shareholders *of nonresident corporations.*"). By investing in a New York corporation, Waste Reduction's investors accepted the fact that New York laws, including section 630, would govern their relationships with the corporation, including the terms of the limited shareholder liability that lies at the very heart of corporation law. See *Nagy*, 79 F.3d at 576 ("the liability of corporate investors and directors for intra-corporate affairs almost invariably depends on the law of the place of incorporation"); Mark J. Roe, *Delaware's Politics*, 118 Harv. L. Rev. 2491, 2527 (2005) (describing section 630 as "the single most important reason why New York shareholders decide to incorporate in Delaware"). Defendants have not offered any persuasive reason for predicting that Indiana courts would disregard Indiana Code § 23-1-49-5 and attempt to impose Indiana law on the internal affairs of a corporation and its shareholders who all chose to have their relationships governed by New York law. Those shareholders chose to invest in a New York corporation subject to a New York law that clearly makes the ten largest shareholders of non-public corporations liable for the corporation's wage debts, subject to certain conditions.

Defendants' public policy theory also runs contrary to the constitutional foundation of *CTS Corp. v. Dynamics Corp. of America* and invites a return to the constitutional flaws that caused the Supreme Court to invalidate an Illinois law in *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982). In *CTS*, one issue was whether an Indiana law governing voting rights of shareholders of Indiana corporations violated the dormant Commerce Clause of the United States Constitution. The Supreme Court held that the Indiana law did not violate the Commerce Clause, but it reached that conclusion only because the Indiana statute applied *only* to Indiana corporations. See 481 U.S. at 89 (noting that Indiana law posed no risk of subjecting interstate commerce to multiple and inconsistent regulations because law applied only to Indiana corporations); *id.* at 93 (recognizing that Indiana had a substantial interest in regulating voting rights of Indiana corporations' shareholders), distinguishing *Edgar v. MITE Corp.*, 457 U.S. at 644 (holding unconstitutional an Illinois statute requiring advance state approval for hostile takeovers of non-resident corporations with Illinois shareholders).

Accordingly, defendants' motions to dismiss are denied with respect to Count I. Plaintiffs can correct any deficiencies in identifying Waste Reduction's ten largest shareholders at a more relevant time after conducting discovery.

II.     *Liquidated Damages under Indiana Law*

In Counts II and III, plaintiffs seek relief that neither Indiana nor New York law provides: liquidated damages against shareholders.  Plaintiffs seek to reach this unprecedented result by combining their preferred features of each state's law to create the legal equivalent of an imaginary griffin or jackalope.[6]

Plaintiffs assert in Count II that Waste Reduction violated the Indiana Wage Payment and Wage Claims statutes.  Plaintiffs allege that defendants are liable for liquidated damages under Indiana Code § 22-2-5-2.  Plaintiffs assert in Count III that Waste Reduction did not notify them about its failures to make payments toward their employee benefit plans, violating Indiana Code § 22-2-12-4.  Defendants, plaintiffs argue, are liable for double damages available for violations of Indiana Code § 22-2-12-4.  These claims would be proper against Waste Reduction, but plaintiffs seek to apply New York's section 630 to these claims against these shareholders.

Indiana Code § 22-2-5-2 and § 22-2-12-4 provide a kind of special status to an employer's debts to its employees.  The statutes do this by allowing employees to sue their employers for liquidated damages for unpaid compensation

---

[6]The town of Douglas, Wyoming is the home of a large jackalope sculpture and apparently issues jackalope hunting licenses to tourists.  The licenses are good for the one-day jackalope hunting season, on February 30.  See Jackalope, http://en.wikipedia.org/wiki/Jackalope (last visited Feb. 29, 2008).  The town of Douglas, however, reports that the hunting season is actually on June 31st.  See Douglas, Wyoming, http://en.wikipedia.org/wiki/Douglas%2C_Wyoming (last visited Feb. 29, 2008).  The court looks forward to authoritative resolution of this dispute within Wikipedia.

and benefits. As discussed above, however, Indiana Code § 23-1-26-3 protects shareholders of Indiana corporations from individual liability. Under Indiana law, shareholders are not liable for the company's debts unless a plaintiff proves "that the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice." *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994). Here, plaintiffs have not argued that they can pierce Waste Reduction's corporate veil. Instead, they argue that New York's section 630 allows them to pierce Waste Reduction's corporate protection for the ten largest shareholders.

New York's section 630 imposes liability on a company's ten largest shareholders for unpaid wages and benefits, but it does not allow for recovery of liquidated damages from shareholders. See generally *Sasso v. Vachris*, 484 N.E.2d 1359, 1362 (N.Y. 1985) ("the only effect of section 630 on employee benefit plans is to give plaintiffs a cause of action to recover payments the corporation was already obligated to provide"); *Lindsey v. Winkler*, 277 N.Y.S.2d 768, 770 (Nassau County Dist. Ct. 1967) (observing that section 630 "was not enacted to make the ten largest shareholders in a corporation specifically responsible for, or guarantors of all indebtednesses of the corporation or of all judgments obtained against it"). The New York legislature has provided for punitive measures against corporate officers who knew about the non-payment of wages. See *Stoganovic v. Dinolfo*, 461 N.Y.S.2d 121, 123 (N.Y. App. Div. 1983) (recognizing that N.Y. Lab. Law

-16-

§ 198-a, rather than N.Y. Bus. Corp. Law § 630, provides for punitive measures against corporate officers who knowingly permitted the corporation to withhold compensation). But the New York legislature has not chosen to make shareholders personally liable for these additional penalties.

Neither Indiana law nor New York law would allow plaintiffs to recover liquidated damages from shareholders of a defaulting employer. Plaintiffs attempt to splice portions of the two states' laws together to produce a result that neither state's law alone would authorize. To bolster this attempt to create a legal sort of griffin, plaintiffs rely on *Mulford v. Computer Leasing, Inc.*, 759 A.2d 887 (N.J. Super. Ct. Law Div. 1999), which is neither precedential nor supportive. In *Mulford*, an employee sued to collect unpaid commissions from two shareholders who also served as officers and directors and one other officer who also served as a director. The *Mulford* court concluded that a New Jersey law imposing personal liability on corporate officers for unpaid wages applied to officers of a New York corporation. The suit sought only the unpaid commissions. The *Mulford* court substantively relied on New York section 630, in addition to New Jersey case law, only to support the finding that the employee first had to seek payment from the company. The *Mulford* case did not involve this issue and does not support the strange hybrid of New York and Indiana law that plaintiffs advocate. Counts II and III are dismissed for failure to state a claim.

III.     *Breach of Fiduciary Duty and Constructive Fraud*

In Counts IV and V, plaintiffs allege that defendants breached a fiduciary duty they owed to plaintiffs and gained an unfair advantage, constituting constructive fraud. Defendants have moved to dismiss these claims for two reasons: (1) defendants did not owe a duty to plaintiffs; and (2) plaintiffs did not plead these claims with sufficient particularity. In their response, plaintiffs did not respond to these arguments supporting dismissal of Counts IV and V. Plaintiffs thus waived Counts IV and V, and they are dismissed. See *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (affirming dismissal under Rule 12(b)(6) where plaintiff failed to offer theory to oppose dismissal; if judges "are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response.").

*Conclusion*

For the foregoing reasons, defendants' motions to dismiss are GRANTED for Counts II, III, IV, and V and DENIED for Count I. Proceedings are stayed as to Count I, except for discovery aimed at identifying the correct shareholder defendants, pending further word on which claims have been paid through the bankruptcy process.

So ordered.

Date: February 29, 2008

*David F. Hamilton*

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Anne N. DePrez
BARNES & THORNBURG LLP
adeprez@btlaw.com,pwhitmer@btlaw.com

Edward E. Hollis
BAKER & DANIELS
eehollis@bakerd.com,denise.simpson@bakerd.com

David S. Wagner
BAKER & DANIELS, LLP
david.wagner@bakerd.com,robin.osbourn@bakerd.com

Mark Richard Waterfill
DANN PECAR NEWMAN & KLEIMAN
mwaterfill@dannpecar.com,ccanny@dannpecar.com,rwalker@dannpecar.com,ecf@dannpecar.com